# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOROTHY ASTORGA,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>IDAHOAN FOODS, LLC,<br><br>　　　Defendant. | Case No. 4:18-cv-00195-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Dorothy Astorga's Motion for Protective Order. Dkt. 17. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to DENY the Motion.

## II. BACKGROUND

Astorga filed her Complaint and Demand for Jury Trial on May 4, 2018, alleging her former employer, Idahoan Foods ("Idahoan"), violated the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). Specifically, Astorga alleges that she suffers from an arthritic wrist condition and that she requested a reasonable accommodation from Idahoan. Astorga claims Idahoan refused to

provide a reasonable accommodation, instead choosing to terminate her employment on April 5, 2018. Idahoan disputes that Astorga ever requested a reasonable accommodation or that she informed anyone at Idahoan about having wrist pain or arthritis. For its part, Idahoan maintains that it terminated Astorga's employment because of her poor work performance and other disciplinary issues.

After her termination, Astorga was hired part-time as a housekeeper by Le Ritz Hotel ("Le Ritz"). Ultimately, Astorga signed up with a temp agency—BBSI—who in turn found her employment with Northwest Cosmetic Labs ("Northwest Cosmetics")—her current employer.

As part of the discovery process, Idahoan notified Astorga that it intended to subpoena both Le Ritz and Northwest Cosmetic to ask for the following information: "Records in your possession relating to Dorothy Astorga . . . including her personnel file, employment history, job description, job application, job restrictions, performance reviews and evaluations, disciplinary actions, wage/salary adjustments, physician's notes, and time off requests." Dkt. 18-1, at 8-12.

Astorga notified Idahoan of her objection to the subpoenas. After an unsuccessful informal mediation between the Court and Counsel, Astorga filed the instant motion seeking a protective order prohibiting Idahoan from serving the two subpoenas.

### III. LEGAL STANDARD

Generally, if no claim of privilege applies, a party can be compelled to produce evidence regarding any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." *See*

Fed. R. Civ. P. 26(b)(1). Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment,'" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). "Under Rule 26, however, '[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting Fed. R. Civ. P. 26(c)(1)). "The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)).

## IV. ANALYSIS

In this case, Astorga argues that Idahoan's subpoenas are improper for two reasons: first, Astorga claims that the information sought is irrelevant; and second, Astorga contends that even if the information has some relevance in this case, the potential harm that might come from these subpoenas—namely that they could negatively interfere with her employment—outweighs any value they otherwise bring. The Court will address each argument in turn.

A.  Relevance

Astorga repeatedly notes that under the ADA she is not required to tell her employers about her disability unless she needs an accommodation. Because she is not required to tell her employers anything, Astorga contends that Idahoan's subpoenas are a fishing expedition and would not produce relevant information. The Court disagrees.

First, in the present action, Astorga claims that Idahoan violated her ADA rights by not granting her request for a reasonable accommodation. By Astorga's own interpretation of the law,[1] Idahoan could only have violated her rights if they knew about her condition in the first place. Astorga contends that Idahoan was aware. Idahoan claims that it was not. In her deposition, Astorga testified that she informed her subsequent employers about her condition—thus lending credence to the argument that she always tells an employer about her wrist condition, each has been accommodating, and Idahoan is at fault for not accommodating her. To verify this claim (and defend itself), Idahoan must be allowed to undertake discovery involving Le Ritz and Northwest Cosmetics.

Additionally, Astorga claims that even if she told her subsequent employers about her condition, that may not be probative in her suit against Idahoan because "disability determinations are to be made based upon the specific requirements of each job, therefore the specific information requested in these subpoenas about her new jobs would not be helpful to a determination of whether she was able to do the Idahoan sanitation job with

---

[1] There appears to be some dispute between the parties as to the finer legal topics of whether Astorga had to inform her employer about her condition, when, to what extent, with what supporting documentation, and if her condition even qualifies under the ADA. The Court will not weigh in on these matters at this time.

or without a reasonable accommodation." Dkt. 20, at 3. This might very well be true. Information from Le Ritz and Northwest Cosmetics may, or may not, be applicable to whether she could *perform her previous job*, however, this information is extremely relevant as it goes to Astorga's credibility in understanding if she was upfront with each employer as she claims she was, as well as each employers' response to her condition.

In short, the information Idahoan seeks is relevant to its defense and can be discovered.

B.  Improper tactic

As a threshold matter, while the parties do not distinguish between the subpoenas directed to Le Ritz and Northwest Cosmetics, the Court sees an important and distinct difference between these two employers. Namely, Astorga only currently works for one of them—Northwest Cosmetics. Accordingly, her claim that adverse consequence may follow these subpoenas only applies to Northwest Cosmetics and not Le Ritz. Even the case Astorga cites in support of her position that subpoenas to employers might result in adverse consequences distinguished between a current and a former employer. *See Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 257 (S.D. Ind. 2002). The Court in that case determined that it was only proper to quash a subpoena served on the current employer, but allowed a subpoena directed at the former. *See id.*

Astorga's explanation on this point is that at some future date she may want to go back and work for Le Ritz and they might not hire her back based upon the subpoena. This is speculative on two levels: first, it is not clear that Astorga will ever work for Le

Ritz again; and second—as will be explained below—it is speculative that anything negative will happen because of these subpoenas.

Finally, the Court is concerned that under Rule 45 and/or Rule 26(c) of the Federal Rules of Civil Procedure, Astorga may not even have standing to object to these subpoenas.[2] Regardless, for the reasons outlined above, the Court will not issue a protective order as to the subpoena directed to Le Ritz.

The Court turns next to the subpoena directed at Northwest Cosmetics. While this subpoena presents a closer call, Astorga has again failed to meet the requisite "good cause" burden for a protective order.

As noted, Astorga argues that these subpoenas might put her employment at risk. The Court's main problem with this objection is that it is wholly speculative. The logic goes as follows: (1) employer receives the subpoena, (2) employer is mad/scared/nervous that Astorga is in the middle of a lawsuit, (3) employer fires Astorga. Astorga has not, however, presented any information—other than her opinion—that would suggest that this outcome is more likely than not.

Furthermore, it is not clear that anyone directly involved with Astorga would even be involved in this process. Northwest Cosmetics is a large company. Presumably someone in legal, HR, or management will be responsible for complying with the

---

[2] Neither party addresses this fact and it is true that a person can object to a subpoena not specifically directed to him or her if "[the party] believes that its own interest is jeopardized by discovery sought from [another]." *See* 8 Wright, Miller, and Marcus, *Federal Practice & Procedure, § 2035* at p. 475 (1994). In short, the Court will—for the purposes of this motion— assume that Astorga does have standing to object to the subpoenas.

subpoena. These parties—more than a lay employee for example—would be more familiar with legal matters and less inclined to a knee-jerk reaction when faced with legal documents such as a subpoena. In addition, these parties likely understand that taking adverse action against an employee simply because he or she is involved in a lawsuit (even a lawsuit against a former employer) could result in legal action in and of itself.

Astorga also argues that Idahoan only wants to issue these subpoenas to harass and intimidate her. In support, Astorga points to an email between her Counsel and Counsel for Idahoan. The Court has reviewed the email in question and finds that while firmly worded, it is not an overt (or subtle) threat, nor is it harassment. Rather, the email outlines Idahoan's reasons for wanting the specific information from Le Ritz and Northwest Cosmetics and its opinion on Astorga's hesitancy regarding the subpoenas and a possible (albeit self-serving) solution to those fears.

Finally, Astorga claims that rather than serving subpoenas, Idahoan could undertake less invasive means to obtain the information it desires. For example, Astorga suggests that Idahoan should first ask for the information via a discovery request and that she (Astorga) could then go get the information from her employers herself and turn it over to Idahoan.

The Court begins by noting that there is no specific order in which discovery must be conducted—that is to say, one need not serve a request for production before serving a subpoena. Each discovery mechanism is a tool in the discovery toolbelt and may be used in the order a party deems most appropriate.

Moving to invasiveness, and Astorga's contention that she could just get these documents herself, the Court has two concerns. First, while a subpoena might cause more of a stir than Astorga personally retrieving her own file, there is no guarantee that that course of action would be any less problematic for Astorga. Her asking for her file could just as easily raise flags with her employer or cause "backlash"—as she fears a subpoena will. Second, and more importantly, there will be no way to determine if what Astorga's turns over to Idahoan is a full and complete file.[3] In that circumstance, Idahoan would most likely have to become involved anyway via depositions or further discovery and motions.[4] Thus, a subpoena may very well be the least intrusive means.

In short, there is no way to know exactly what will happen—if anything at all—when Idahoan serves its subpoenas on Le Ritz and Northwest Cosmetics.[5] However, upon review, the Court finds that Astorga has not met her burden of showing that "specific prejudice or harm will result" in the absence of a protective order. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 424. For these reasons the Court will not

---

[3] The Court is not disparaging Astorga or her Counsel. It is simply a reality that Idahoan would be left to take Astorga's word that she received and provided the complete file.

[4] Finally, Idahoan may choose to depose individuals from Le Ritz or Northwest Cosmetics regardless of what it receives in response to its subpoenas—as would be its prerogative—and in doing so, Astorga's lawsuit and situation would come to light all the same.

[5] Astorga claims that if Idahoan "insists on serving these subpoenas, we will be adding a claim for violation of the ADA" and "if [Astorga] loses her job, her damages will increase." Dkt. 17-1, at 7. This language does not seem to be all that different from Idahoan's purported "threating email," but regardless, it is within Astorga's power to proceed with litigation as she sees fit based upon the outcome of the subpoenas. Having said that, it is difficult to see how a party is violating the ADA when it uses a discovery method approved by the Court and by the Federal Rules of Civil Procedure.

grant a protective order. Idahoan can serve its subpoenas on Le Ritz and Northwest Cosmetics when it deems appropriate.

## V. CONCLUSION

The Court hereby ORDERS:

1. Astorga's Motion for a Protective Order (Dkt. 17) is DENIED.

DATED: January 25, 2019

David C. Nye
Chief U.S. District Court Judge