UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOROTHY ASTORGA,<br><br>  Plaintiff,<br><br>v.<br><br>IDAHOAN FOODS, LLC,<br><br>  Defendant. | Case No. 1:18-cv-000195-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

Pending before the Court is Defendant Idahoan Foods, LLC's (Idahoan) Motion for Summary Judgment (Dkt. 24) and two Motions to Strike (Dkts. 31, 32). After the parties fully briefed all three motions, the Court held oral arguments and took the matters under advisement.

For the reasons set forth below, the Court GRANTS each Motion.

## II. BACKGROUND

Plaintiff in this matter, Dorothy Astorga, was an employee of Defendant Idahoan from 1987 until her employment was terminated on April 5, 2018. Dkt. 1. Astorga worked on the midnight shift in a variety of different positions, including as a sorter, production operator, and sanitation technician.

Astorga initially worked as a sorter, where she used her hands to pick weeds, rocks, and other debris from the potatoes before they were processed. Astorga eventually became

a production operator, better known to Idahoan employees as a "proctor operator." As a proctor operator, she operated a large machine known as a "proctor," which carves, cooks, and seasons potatoes. Idahoan required proctor operators to clean the proctors, apply additives to preserve and color the product, and sharpen the knives in the machine.

As part of her employment, Astorga received annual performance reviews where her supervisors evaluated her work, often providing commentary on how Astorga needed to improve. In the final decade of her employment, at least six annual reviews contained categories wherein Astorga fell below the "meets expectations" threshold. Dkt. 24-6, 24-7, 24-8, 24-9, 24-10, and 24-11. The areas in which Astorga underperformed were usually "Accountability," "Initiative," "Communication," or "Time Management." *Id*. Astorga performed well in her "Attendance," "Punctuality," "Product Quality," and "Safety" areas of performance review. *Id*.

In addition to performance reviews, Idahoan employees gave informal and formal discipline for certain behavior, including: a failure to meet performance requirements, harassment, violation of company policy, and insubordination. Idahoan kept these written-warnings in the employee's personnel file. Astorga's personnel file contained three written-warnings. Dkt. 24-13.

Astorga's first written-warning was in November 2011, for failing to clean her proctor. *Id*. Astorga received additional written-warnings for the same conduct in December 2016, and September 2017. *Id*. Astorga's 2015 annual performance review notes, again, her refusal to clean her proctor, and further indicates Astorga's poor attitude toward her co-workers and supervisors. Dkt. 24-14. Astorga's September 2017 written-

warning included similar statements regarding Astorga's relationship with co-workers and supervisors. Dkt. 24-13. All of Astorga's written-warnings explained that her failure to finish her work resulted in the next-shift having to complete it, and that any further failure to clean her equipment could result in her termination. *Id*.

Astorga also received verbal warnings from her supervisors. In 2015, Astorga's then supervisor, Conrad Harris, personally documented two occasions on which he had to verbally correct Astorga's behavior. Dkt. 24-29.

In August 2017, Astorga made an offensive remark to another employee. Dkt. 24-15. This incident came a few days after Astorga's new supervisor, David Young, discussed this type of behavior with Astorga. Dkt. 24-15. Astorga's September 2017 written warning for failing to clean her proctor noted that incident. Dkt. 24-13. Astorga's September 2017 third written warning placed her on probation for six months. *Id*. Instead of terminating Astorga in September 2017, Young claims he wanted to give her a "final written warning with total understanding that anything more will result in her termination." Dkt. 24-16.

While Astorga was officially on probation in November 2017 Young was notified that Astorga was continuing her behavior of leaving work for the next shift to finish. In response, Young demoted Astorga from proctor operator to sanitation technician. Young wrote in an email that he believed a less demanding position would allow Astorga to remain with Idahoan for "some time to come." Dkt. 24-18.

The demotion officially occurred in December 2017. At that time, Idahoan gave Astorga a form titled "Sanitation Technician Position Description" outlining the essential functions of sanitation technicians. Dkt. 24-19. On the form was the question, "Are you

able to perform these tasks with or without reasonable accommodation?" *Id*. In response, Astorga circled "Yes" next to that question. *Id*. The form also provided a blank space for Astorga to identify any accommodations she would need to perform the job, if any. *Id*. Astorga left the space blank and signed the form. *Id*. Astorga verbally confirmed with Young that she was able to perform the required tasks. Dkt. 24-5.

As a sanitation technician, Astorga's primary responsibility was cleaning tanks that held the potatoes. Idahoan had hoses throughout the facility to assist the sanitation technicians. Each hose was 50 to 100 feet in length and were comparable to a garden hose. The hoses were attached to a wheel on one end to allow for easy dispensing and roll-up.

In addition to routine cleaning assignments, sanitation technicians were also responsible for spontaneous events where potatoes would plug drains, causing flooding and a subsequent mess. These plug-ups, or "upset situations" as Young describes them, were "all hands-on deck" situations. Dkt. 24-5. Sanitations technicians, however, bore most of the responsibility. Since these "upset situations" were always unexpected, sanitation technicians needed to perform their routine tasks timely, so they were ready for these events should they occur without warning.

As a Sanitation Technician, Astorga struggled with her time management and regularly left work for the next shift to finish. Astorga also recruited employees from the sorting line to perform her assigned work. When upset situations occurred, Astorga sometimes refused to help. Young verbally coached Astorga regarding her behavior. Dkt. 24-5. In March 2018, Young held a meeting to instruct employees that each should perform his or her own job and not tell others how to do their jobs. At that time, Astorga challenged

Young and stated she should be able to pull sorters away from the sorting line to help her. Young instructed her she could not.

After that meeting, Young began a conversation about Astorga's termination with Idahoan management. One such conversation occurred between Young and another Idahoan supervisor, Kurt Murdoch, on March 29, 2018.

At this time, David Meinhardt, a shift lead who reported to Young, was Astorga's supervisor. According to Meinhardt, on or about March 30, 2018, Astorga refused to help with an upset situation in the "reg room." Dkt. 24-20. On March 31, Astorga asked Meinhardt if she could work the sorting line a couple days a week. Meinhart claims Astorga never mentioned arthritis or wrist pain to Meinhardt when she made the request. Astorga disputes this and claims to have told Meinhardt specifically about the arthritis in her wrists at this same time. Astorga further claims that she told Meinhart that she did not mind if Idahoan said no to her request, and that she would continue with the sanitation technician job for the entire week if Idahoan preferred. Meinhardt said he would pass on her request to Young, who was not present that day.

On April 1, Meinhardt informed Young that Astorga refused to help with the upset situation, and further, had requested to work the sorting line. That same day, Young sent an email to Idahoan management explaining his intent to terminate Astorga based on her refusal to do her job and the "continual nature of the problems surrounding her." Dkt. 24-21. Idahoan management agreed with Young's recommendation to terminate Astorga. Dkt. 24-5. Idahoan discussed the best way to terminate Astorga based on how poorly she had received reprimands in the past.

Also on April 1, 2018, Astorga claims that she specifically told Young that the reason she was requesting the temporary moves was because she was having wrist pain from moving the heavy hoses as a sanitation technician, but if she was able to work at a different work station one or two days that week, that would help her wrists to recover. Astorga claims that she told Young that it was okay if he said no, and that she would continue doing the sanitation technician job if he preferred. Astorga claims Young did not say one way or another whether he would approve of Astorga working at a different work station that week, but he sent her to a different work area to make boxes and tie them up, which helped to give Astorga's wrist a rest for that day. Astorga claims Young sent her to a different area again to bag potatoes the next day (April 2) to give her wrist a rest. That day, Astorga claims she went to Young's office to thank him for helping grant her alleged requested accommodation. Astorga claims the next day, April 3, Young sent Astorga back to do the sanitation technician job. Astorga asserts that at that time, she thought that the company had agreed to her request, and she was happy with the schedule.

On April 5, 2018, just prior to Astorga's shift ending, Young and Idahoan manager Danny Yates, met with Astorga and informed her of their decision to terminate her employment. Astorga claims that at that meeting she brought up her wrist pain in protest of her firing. Astorga claims that at no time did Idahoan discuss her alleged arthritis with her, nor what she could and could not do to ascertain whether the company could accommodate her. Idahoan claims Astorga never mentioned her arthritis in her requests to work a different job a few times a week. Meinhardt acknowledged that Astorga could perform the job at the time of her termination.

Astorga filed this action claiming Idahoan terminated her because she suffered from arthritis, and that her request to work the sorting line was a request for a reasonable accommodation. According to Astorga, she notified Meinhardt that she had arthritis on March 31, 2018, the same time she requested to work the sorting line. Astorga also claims that she notified Young on April 3, 2018. Idahoan denies Astorga ever mentioned she had arthritis or any similar condition when making her requests to either of these individuals. Astorga also claims Idahoan discriminated against her based on her age. Dkt. 1. At the time of her termination Astorga was 63 years old. Dkt. 28-2. Astorga claims several team leads and co-workers asked about her age and her retirement plans, and that Idahoan ultimately terminated her—in part—because of her age. Dkt. 24-4, 28-2. Idahoan denies these claims as well. Astorga claims that due to her termination, she has suffered lost income and lost insurance and other benefits in the past, and she will continue to make less than she made at Idahoan for years to come. Additionally, Astorga claims her termination has caused her severe anxiety, stress, and other pain and suffering.

Following discovery, Idahoan filed a motion seeking summary judgment on all of Astorga's claims.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering

a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. ANALYSIS

### A. ADA Claim

To establish a prima facie case of discrimination under the ADA, an employee must show she is (1) disabled within the meaning of the ADA; (2) qualified to perform the essential functions of her employment, with or without reasonable accommodation, and (3) that she suffered an adverse employment action. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

Idahoan argues Astorga has failed to meet the prima facie elements for discrimination because Astorga is not disabled as defined by the ADA, Idahoan has proffered a legitimate reason for Astorga's termination, and Astorga has failed to produce any evidence that Idahoan's legitimate reason for termination was pretextual.

The ADA defines 'disability' as the following: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. sec. 12102(1). "[T]hat the Act defines 'disability' 'with respect to an individual' makes clear that Congress intended the existence of a disability to be determined in [a] case-by-case manner." *Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 199 (2002) (internal citation omitted); *see also Atencio v. Joint Jerome Sch. Dist. No. 261*, 837 F. Supp. 2d 1158, 1164–65 (D. Idaho 2011).Idahoan argues that Astorga is not disabled as defined by the ADA because Astorga is not—nor has she ever been—officially diagnosed as having arthritis. To this day, the sole testimony in support of her arthritis claim comes from Nurse Practitioner Fay Call in a recently drafted letter to Astorga's attorney. In the letter, Fay Call states that when she examined Astorga over one year ago she saw a joint deformity and concluded Astorga had arthritis.

Astorga counters that she does have a diagnosed disability, but more importantly that because Idahoan *regarded* her as disabled, she meets the first element of an ADA prime facie case.

First, Astorga argues that her anxiety diagnosis may be considered a disability for purposes of this lawsuit. While anxiety can assuredly serve as the basis for an ADA suit, it cannot serve as a basis in *this suit* because Astorga did not claim anxiety as her disability— nor as part of her disability—in her complaint, and she never amended her complaint to include anxiety as one of, or part of, her disabilities. Therefore, the Court may not consider Astorga's anxiety claim here. At the pleading stage, a Plaintiff must put each defendant on

notice of what his or her claims are and the basis for each claim. Astorga listed arthritis as her disability. Her alleged arthritis will be considered, but her anxiety will not. While it appears Astorga's anxiety came up during discovery, Idahoan was never on notice that it formed the basis of her claim for discrimination. Had Astorga included anxiety in her complaint as one of, or part of, her disabilities, the Court would consider such a claim. In its absence, however, the Court will focus solely on arthritis.

Second, and relatedly, Astorga did not actually plead a "regarded as" disability claim in her Complaint and, therefore, is precluded from raising such an argument at summary judgment. *See Stuart v. Vilsack*, No. 2:14-CV-416, 2016 WL 6902347 *3 (E.D. Wash. 2016) (because Plaintiff had not plead a "regarded as" claim she could not argue such a theory at summary judgment); *Ruiz Rivera v. Pfizer Pharmaceuticals, LLC*, 521 F.3d 76, 85 (1st Cir. 2008) (finding "it simply will not do for a plaintiff to fail to plead with adequate specificity facts to support a regarded as claim, all-the-while hoping to play that card if her initial hand is a dud"). If Astorga wanted to plead a "regarded as" ADA claim, she could have done so, but she did not. She cannot do so now.

In short, the Court must evaluate whether Astorga had an actual disability—specifically arthritis—under the ADA. Under the circumstances, the Court finds that Astorga has not proven she had a disability as required by the ADA.

Astorga claims that her arthritis started more than six months before Idahoan terminated her, and that the impairment continues to this day. Astorga explains that her arthritis is intermittent, can be triggered by cold weather, and that when she used the water

hoses as a sanitation technician, it caused her wrist to swell, feel heavy, and that her fingers would stick together.

Astorga explains that when her arthritis flared up, these impairments substantially limited her ability to work and to care for herself. For example, Astorga states that it was difficult to grasp objects, close her hand, do repetitive motions at work, life heavy objects, and move the heavy hoses that she used as a sanitation technician at Idahoan.

Astorga's medical records indicate that on April 12, 2018, one week after Idahoan terminated her, she went to see Nurse Practitioner, Fay Call for her annual gynecological wellness exam. Dkt. 28-2. Apparently, at that exam, Astorga told Call that Idahoan terminated her because her arthritis inhibited her ability to grasp objects and close her hands. Astorga informed Call that repetitive grasping aggravated her condition. Call noted Astorga's complaints in the "subjective" portion of her notes. Dkt. 24-25. The "objective," "assessment," and "plan" portion of her notes do not reference arthritis. *Id*. Call also prescribed Astorga Meloxicam, a drug used to treat joint pain.

Astorga never filled the prescription. Dkt. 24-24. Astorga received refills for Meloxicam in July and August 2018 but did not fill either of those prescriptions. Dkt. 24-24. Astorga claims she never filled the prescriptions because she could not afford them. Dkt. 28-2.

The problem in this case is the lack of evidence supporting Astorga's claimed disability. None of Astorga's medical records from before her termination document arthritis or any symptom of arthritis. No medical provider specializing in any kind of arthritis physically examined Astorga's wrist. Astorga never received radiographic

imaging of her wrist. Astorga has not specified what type of arthritis she suffers from. Astorga never notified any of her subsequent employers that she suffered from arthritis, wrist pain, or any other type of disability. Dkt. 24-26, 24-27, 24-30, and 24-31. Astorga admitted that her subsequent employment required the use of her wrist. Dkt. 24-4 at 16.

By all accounts, Astorga's arthritis appears to be self-diagnosed. This cannot serve as the basis for an ADA claim. *See e.g. Felkins v. City of Lakewood*, 774 F.3d 647, 651–52 (10th Cir. 2014) (holding, *inter alia*, that Plaintiff's self-diagnosis declaration was inadmissible on summary judgment in ADA case to the extent it diagnosed Plaintiff's medical condition); *Crowell v. Beeler*, No. 114CV01724AWIBAM, 2017 WL 1198579, at *7 (E.D. Cal. Mar. 31, 2017) ("Courts have recognized that attempts by a plaintiff to self-diagnose an impairment are insufficient for a claim to go forward."); *Heit v. Aerotek Inc.*, 2016 WL 6298771, at *3–4 (W.D. Wash. Oct. 27, 2016) (stating that "[a] plaintiff cannot self-diagnose her own disability" and finding insufficient evidence of a disability because, "[w]ithout more, Mr. Heit's claim that he has 'shy bladder syndrome' amounts to self-diagnosis, and is insufficient as a matter of law for his claim to go forward under the ADA . . . ."); *Hooker v. Adams*, 2008 WL 2788404, *8–9 (E.D. Cal. July 18, 2008) (holding: "Plaintiff may not defeat defendants' motion [for summary judgment] by simply tendering his own opinion and the opinions of lay persons that he is dyslexic and has difficulty reading and spelling."), report and recommendation adopted, 2008 WL 3992733 (E.D. Cal. Aug. 25, 2008), aff'd, 370 Fed. Appx. 776 (9th Cir. 2010) (affirming that: "Summary judgment was proper because [Plaintiff] failed to raise a triable issue as to whether he had a cognizable disability such that defendants had the obligation to permit him to possess a

type-writer otherwise prohibited by prison rules."); S*ee also Ernst v. Wheeler Const., Inc.*, 2009 WL 1513106, *5 (D. Ariz. Mar. 17, 2009) (holding that: "[I]n a case like this one, where medical evidence is actually available, this Court concludes that Plaintiff cannot create an issue of fact by offering only his own affidavit with a self-diagnosis in contradiction of a doctor's contemporaneous diagnosis.").

Astorga has failed to meet her burden to prove she was disabled within the meaning of the ADA. The sole authority Astorga relies on is medical notes from an April 12, 2018, meeting with a Family Nurse Practitioner, seven days after she was fired. Even then, these notes are less than illuminating. They confirm that *Astorga* thought she had arthritis, but do not confirm that from a medical standpoint.

Fay Call's prescription for Meloxicam weighs in favor of a diagnosis, but medical providers sometimes prescribe medications without an official diagnosis. The Court does not know the implications of prescription for Meloxicam. Astorga could have entered evidence into the record that explained how powerful Meloxicam is, how often it is prescribed, and whether it is commonplace for doctors to prescribe Meloxicam with a diagnosis or without. Astorga failed to do so. Astorga did not even timely obtain an affidavit or declaration from Fay Call to bolster the claim that Fay Call did indeed diagnose Astorga with arthritis. Astorga has failed to prove she was diagnosed with arthritis within the meaning of the ADA.

Furthermore, as will be explained below, the lately filed declaration of Call that Astorga now wants to rely on in support of her claim must be struck because it was not properly disclosed.

No party (nor the Court) is claiming that Astorga does not have pain in her hands. But to succeed on an ADA claim where a "regarded as" claim was not raised in the complaint, Astorga must prove she was disabled within the meaning of the ADA. Astorga has failed to do so.

Accordingly, there is no material fact at issue and summary judgment is appropriate on Astorga's ADA claim.[1]

### B. ADEA Claim

The Age Discrimination in Employment Act (ADEA) makes it unlawful "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The 9th Circuit evaluates ADEA claims that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973). *See Enlow v. Salem–Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004). Under this framework, the employee must first establish a prima facie case of age discrimination. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). If the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. *Id*. If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful

---

[1] The Court need not address the remaining elements of an ADA claim in light of Astorga's failure to meet the first prong. Likewise, the Court need not analyze Astorga's arguments that (1) Idahoan did not accommodate her, (2) Idahoan did not engage in the interactive process, and (3) that Idahoan terminated her because she asked for an accommodation because each of these arguments stem from the underlying idea that Astorga has a disability under the ADA—which the Court has just determined Astorga has not sufficiently proven.

discrimination. *Id.* "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000).

To establish a prima facie case of age discrimination, a plaintiff must establish that he or she was (1) at least forty years old, (2) performing his or her job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise "giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

Idahoan seeks summary judgment on this claim arguing that Astorga cannot establish a prima facie case for an ADEA claim, that Astorga bears the burden of proving her performance was satisfactory, that Astorga was not performing satisfactorily at the time of her termination, and that Astorga repeatedly ignored her assigned tasks, ignored Idahoan policies, and failed to improve her behavior.

Idahoan first argues that an email Astorga claims is indicative of age discrimination was not discriminatory but was reasonably cautious. Idahoan then explains that Astorga has failed to produce any admissible evidence showing that it replaced her with a younger employee. The Court will address each argument in turn.

As a threshold matter, Astorga points to an email from her supervisor to other Idahoan decisionmakers—regarding how to handle her firing—as evidence of age discrimination.

On April 5, 2018, Young wrote an email to Idahoan management that stated:

Are either of you in the office? I think we need to talk about this one. I believe this firing needs to be handled differently than others considering *how long she's been here, her age*, her history of dramatizing even write ups and the reasonable expectation that she'll faint (considering that she did with me when I wrote her up) it might even be a good idea to possibly have medical personnel on standby, I wish I was kidding but I'm not. I'm not going to be held "hostage" by these concerns but I still think we need to proceed in a somewhat cautious manner.

Dkt. 28-3 (emphasis added).

This email, however, is ambiguous. *Caution*, due to someone's age, does not automatically equate to *firing* someone because of their age.

Even if Idahoan fired Astorga because of her age, Astorga has failed to meet her burden to show that Idahoan replaced her with someone substantially younger than her.

At the time of her termination, Astorga was approximately 63 years old. Dkt. 28-2. Astorga claims that in the months leading up to her termination, several team leads and co-workers asked about her age and her retirement plans. Dkt. 24-4, 28-2. Astorga believes these age-based comments were somehow related to Idahoan's decision to terminate her—or at the very least are indicative of her co-worker's general demeanor towards her. There is no evidence to corroborate this claim.

Astorga further alleges that after Idahoan terminated her, it put out an ad out for her replacement, and subsequently replaced her with a woman substantially younger (more than 10 years, she is in her thirties) than her. Astorga has not, however, produced admissible evidence to verify this claim. Astorga relies on hearsay from an employee who told Astorga a younger woman replaced her. Astorga could have deposed this employee so

the employee's statement would be on the record, but Astorga did not do so.

Moreover, Astorga does not present any other evidence of the advertisement she claims was issued by Idahoan or how that position was ultimately filled. Astorga worked on a team and her title was "sanitation technician." Idahoan employs multiple people under such a title. When asked who replaced Astorga in her job as a sanitation technician, Young did not identify anyone in particular. Dkt. 28-3. Young did identify a woman who is in her 30s or 40s as new to the shift. Dkt. 28-3. Astorga did not further question Young to identify when this woman was hired or who (if anyone) she replaced. Being new to the shift does not necessarily mean she was hired immediately after Astorga was fired, let alone hired to replace Astorga. Absent admissible evidence confirming the job posting, who filled it, how old he or she was, and when the replacement took place, Astorga has failed to meet her burden proving Idahoan replaced her with someone younger.

Absent disputed material facts on Astorga's ADEA claim that must be resolved by a finder of fact, summary judgment is likewise appropriate on this claim as well.

### C. Motions to Strike

As briefing on the Motion for Summary Judgment ended, Idahoan filed two Motions to Strike (Dkts. 31, 32) contesting two declarations Astorga filed as part of her Response to Idahoan's Motion for Summary Judgment.

The Court has broad discretion in disposing of motions to strike. Every motion is unique, can be brought under numerous—or differing—legal theories, and must be viewed in the context of case-specific facts.

Idahoan has filed two such motions offering two different legal theories in support. The Court will address each in turn.

1. Astorga's Declaration

In opposition to Idahoan's Motion for Summary Judgment, Astorga included her affidavit in which she lays out various facts and opinions. In support of her claim for age discrimination, Astorga states that Idahoan replaced her with a substantially younger woman and that she knows this because an Idahoan employee, Maria Rosales, told her so. Idahoan argues Astorga's assertion is hearsay and must be stricken from the record.

Astorga argues that Rosales' statement is not hearsay under the Opposing Party's statement exclusion in the Federal Rules of Evidence 801(d)(2)(b) which explains that an exception to the general hearsay rule exists if "[t]he statement is offered against an opposing party and . . . (B) is one the party manifested that it adopted or believed to be true," and/or (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." The Court disagrees. There is nothing in the record to suggest that this employee could speak on behalf of the company (i.e. she is not squarely a "party-opponent"), nor is there any evidence that Idahoan adopted her statement (that they were wholly unaware of). Further underscoring the validity of Rosales' testimony is the fact that she could not actually identify the allegedly "younger employee in her thirties" that worked on the same shift and supposedly replaced Astorga.

Astorga could have deposed the current employee who claims Idahoan replaced Astorga with someone younger. She did not. For all of these reasons, Rosales' statements are hearsay, do not fall under the hearsay exclusions she referenced, and are inadmissible.

Idahoan's Motion (Dkt. 31) is GRANTED. Paragraph 14 of Astroga's Declaration (Dkt. 28-2) is stricken and the Court will not consider it.

2. Fay Call's Declaration

Also, as part of her opposition to Idahoan's Motion for Summary Judgment, Astorga included the April 5, 2019, affidavit and "letter" of Fay Call—the Nurse Practitioner who evaluated her approximately one week after Idahoan terminated her. In that letter to Astorga's Counsel, Call discloses that Astorga has arthritis and joint deformation in her hands and that she noticed this at the appointment on April 12, 2018—roughly one year prior.

Idahoan argues that Call's declaration—or more specifically, the portions related to arthritis—should have been disclosed before the December deadline for expert witness testimony as those opinions are medical, or expert, in nature. Idahoan argues that Astorga disclosed Call would testify about Astorga's stressors and anxiety and that she was disabled within the meaning of the ADA, *but not* about any joint deformity or arthritis.

Astorga argues that Call is not a traditional "retained" expert witness but rather a non-retained expert witness, or a treating physician, who is simply testifying about the treatment she provided. As such, Astorga claims Call need only meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(C). Under subsection (C), no written report is required; only a summary of the facts and opinions on which she would testify. The Court agrees.

Call is not a retained expert witness subject to Rule 26(a)(2)(B). That said, Call is still subject to the requirements of Rule 26(a)(2)(C) and Astorga's disclosure was not

sufficient under those requirements with regard to the joint deformity statement.

Astorga disclosed the subject matter as required under Rule 26(a)(2)(C)(i), but not the "summary of facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii). Astorga outlined that Call would testify about Astorga's stressors and anxiety and that she "was disabled within the meaning of the ADA." Dkt. 30. However, that summary was not a sufficient warning that Call would be testifying that Astorga had a joint deformity or arthritis.

Idahoan's Motion (Dkt. 32) is GRANTED. The first sentence of paragraph 4 of Fay Call's Declaration (Dkt. 28-4) is stricken from the record, and the Court will not consider it.

## V. CONCLUSION

As outlined above, Astorga failed to meet the necessary elements to prove a prima facie case for her ADA and ADEA claims. Summary Judgment in Idahoan's favor is appropriate.

## VI. ORDER

IT IS HEREBY ORDERED:

1. Idahoan's Motion to Strike (Dkt. 31) is GRANTED. Paragraph 14 of Dorothy Astroga's Declaration (Dkt. 28-2) is stricken.

2. Idahoan's Motion to Strike (Dkt. 32) is GRANTED. The first sentence of paragraph 4 of Fay Call's Declaration (Dkt. 28-4) is stricken.

3. Idahoan's Motion for Summary Judgment (Dkt. 24) is GRANTED.

4. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: August 29, 2019

David C. Nye
Chief U.S. District Court Judge